Fabricant, Judith, J.
INTRODUCTION
This action arises from an application for a special permit to build a three-family dwelling in a flood plain district. After a decision denying the application, appeal to this Court, and remand for reconsideration, the Board granted the application, and a group of abutters now appeals. Before the Court are cross motions for summaiy judgment. After hearing and review, the Court concludes that the Board misconstrued the previous order of remand, and that the matter must therefore be remanded once again.
BACKGROUND
Stephen Zeboski and Gary Gabriel, doing business as Properties R.E. (collectively Properties) own an undeveloped parcel of land located within a residential zoning district that fronts on the southerly side of Sea Street in Quincy, Massachusetts. Because the site is in a Flood Plain District, any construction on the site would require a special permit under section 17.40.060 of the zoning by-law. That section provides that the Zoning Board of Appeals “may” grant a special permit, subject to seven conditions set forth in the section. The second condition, provides: “B. The land is shown to be neither subject to flooding nor unsuitable for the proposed use because of hydrological and/or topographic conditions.”
In early 2004, Properties applied for a special permit to construct a three-family house on the site. After a public hearing, at which a number of abutters and others spoke in opposition, on February 26, 2004, the Board issued a decision denying the application on the ground that “it was the consensus of the Board that the site is unsuitable to be build upon at all.” Properties appealed to this Court pursuant to G.L.c. 40A, §17. That appeal, docket number 04-0462, was tried before Judge Connor on January 24, 2005. At trial, Properties and the Board stipulated that all of the conditions other than B were met;[3] the trial thus focused solely on the factual issue of whether the land was “neither subject to flooding nor unsuitable for the proposed use because of hydrological and/or topographic conditions.”
Judge Connor issued a decision on February 28, 2005. He found, based on the evidence at trial, that
the potential flooding to which the premises are subject is not inland flooding which is the concern of the By-law but coastal flooding which comes from the sea and the marsh. The premises will not in itself generate any flooding and its development will not increase the *247 water elevation on the premises or in the neighborhood. The parcel is not unsuitable because of hydrological or topographic reasons for the development.
Judge Connor ruled further that “[t]he ZBAin this case has failed to make the requisite explicit findings of fact, and therefore I find that its decision is invalid.” On those grounds, he ordered the Board’s decision vacated and the matter remanded the matter to the Board “for reconsideration of the application.”
The First Assistant City Solicitor transmitted Judge Connor’s decision to the members of the Board with a cover memorandum dated April 28, 2005. He stated, “Judge Connor has vacated the Board’s decision and remanded the case to you for reconsideration of the application. The Zoning Board is bound by Judge Connor’s findings ... It is therefore, the opinion of this office, that the Board should conduct a new hearing to enable the Board to establish what, if any, appropriate conditions should be placed upon the applicant’s permit.”
The Board conducted a further hearing on June 26, 2005. Again, a number of abutters, including some of the plaintiffs now before the Court, as well as others, spoke in opposition, citing “flooding issues.” The Board made two findings, neither of which addressed the substance of the application or its conformity to the conditions provided in the by-law.[4] A motion to approve the application failed by a vote of three to two, four favorable votes being required. At a further hearing on August 23, 2005, however, the Board reconsidered its decision, and the four members present voted unanimously to approve the application. The Board’s decision, dated September 14, 2005, recites some of the requirements of the by-law for the grant of a special permit, but does not include any findings by the Board regarding compliance of the application with those requirements.
The abutters filed this action on September 30, 2005. Their complaint alleges that the Board “exceeded its authority and/or failed to properly perform its special permit granting authority function, in that its members clearly failed again to ‘make the requisite explicit findings of fact’ instead voting to grant the permit due to their misunderstand [ing] of their role upon the remand order.”
DISCUSSION
Summary judgment should be granted where it appears from the pleadings and evidentiary materials offered that there are no genuine issues of material fact and that the moving parly is entitled to judgment as a matter of law. Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 426 (1995); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). Summary judgment is a device “to make possible the prompt disposition of controversies on their merits without a trial, if in essence, there is no real dispute as to the salient facts or if only a question of law is involved.” Id. at 554.
The issue presented here is whether, on remand after Judge Connor’s decision, the Board acted in accord with that decision and in accord with the law. On the record before the Court, it is apparent that that question turns not on any factual dispute that may exist between the parties, but only on matters of law. Having carefully reviewed the relevant principles of law, Judge Connor’s decision, and the Board’s decision on remand, the Court concludes the Board misconstrued Judge Connor’s decision, and as a result, failed to perform the function required of it by the by-law. For that reason, the matter must again be remanded to the Board for further consideration.
As quoted supra, the by-law in issue in this cases authorizes, but does not compel, the Board to grant a special permit if certain requirements are met. Such discretionary authoriiy to grant special permits is a standard feature of zoning by-laws, and is consistent with the Zoning Enabling Act. See MacGibbon v. Board of Appeals of Duxbury (McGibbon II), 356 Mass. 635, 638 (1970). Here, as in that case,
[n]either the Zoning Enabling Act nor the town zoning by-law gives the [applicants] an absolute right to the special permit which they seek. The board is not compelled to grant the permit. It has discretionary power in acting thereon. The board must act fairly and reasonably on the evidence presented to it, keeping in mind the objects and purposes of the enabling act and the by-law. The decision of the board cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.
Id. at 638-39. The Board’s discretion is such that it “may deny a [permit] even if the facts show[ ] that a permit could lawfully be granted.” Zaltman v. Board of Appeals of Stoneham, 357 Mass. 482, 484 (1970); Britton v. Zoning Board of Appeals of Gloucester, 59 Mass.App.Ct. 68, 74 (2003).
A Board must give reasons for its decision, see McGibbon II, supra, 356 Mass. App. at 639, although the reasons need not be as specific or detailed in a case of denial as in one of grant of a special permit. See Board of Aldermen of Newton v. Maniace, 429 Mass. 726, 732 (1999); MacGibbon v. Board of Appeals of Duxbury (McGibbonIII), 369 Mass. 512,515 (1976). The reasons given must be consistent with the by-law, and within the scope of the board’s authority under the Zoning Enabling Act. McGibbon II, supra, 356 Mass. at 640-41.
In reviewing a decision either to grant or to deny a special permit, the Court’s role is to hear the evidence de novo, find the facts, and then determine whether, on the facts found by the Court, the Board’s decision was a legitimate exercise of its discretion. See Britton v. Zoning Board of Appeals of Gloucester, 59 Mass.App.Ct. at 72-73. The reviewing court acts entirely independently in deciding the facts, based on the evidence before it, id. at 72, and gives only minimal deference to the Board’s interpretation of its own *248 zoning by-law. Id. at 73. Having found the facts and identified as a matter of law the proper criteria and standards, however, the Court must then give a high level of deference to the Board’s exercise of discretion on the facts found, as long as the Board has applied the proper standards. Id. at 74. Thus, the ultimate inquiry for the Court is whether, on the facts as the Court has found them, any rational board could conclude that the permit should be denied on any ground authorized under the by-law. Id. at 74-75.
Here, the Board’s initial decision denied the application apparentlyalthough its factual findings and reasoning were less than clearly expressedon the sole ground that “the site is unsuitable to build upon at all.” This conclusion, as far as can be determined from the decision, arose from the statements of abutters and others expressing opposition and referring to flooding observed on the site. On review, Judge Connor conducted a trial de novo as to the issue of flooding. He found, as a fact, that the potential flooding to which the premises are subject is coastal flooding, not inland flooding; that the premises will not in itself generate any flooding; and that its development will not increase the water elevation on the premises or in the neighborhood. Further, he ruled as a matter of law that the concern of the by-law is inland flooding, not coastal flooding. On the basis of those factual findings and that interpretation of the by-law, he concluded that the Board’s finding that the site was “unsuitable” was without foundation. Further, in the absence of any other pertinent findings or reasons to support the decision, he ruled that the decision could not stand. He therefore remanded the matter to the Board for further consideration.
Importantly, Judge Connor did not rule that the Board was required to grant the permit. His ruling, rather, was merely that the only reason the Board had given was inconsistent with the facts as he found them, in light of the by-law as he interpreted it. On remand, the Board retained its full measure of discretion to grant or deny the permit, provided that it acted in a manner consistent with the facts found and with the by-law as the Court had construed it. See Anderson v. Planning Board of Norton, 56 Mass.App.Ct. 904, 905 (2002).
The Board’s decision on remand reflects neither the exercise of discretion, nor the factual findings or reasoning necessary to review. It appears, rather, that the members of the Board understood the Court’s decision as divesting them of all discretion, and directing them to approve the permit. That was a misunderstanding. Accordingly, the matter must be remanded again, for the board to exercise its discretion based on the facts found by Judge Connor and whatever additional facts the board may find with respect to matters he did not address, considered under the standards of the by-law as Judge Connor has interpreted it.
On remand, the Board is bound by Judge Connor’s factual findings. Thus, it is not open to the Board to find, as a factual matter, that the site is subject to inland flooding, as opposed to coastal flooding; that the site will in itself generate any flooding or that its development will increase the water elevation on the premises or in the neighborhood. Similarly, the Board is bound by Judge Connor’s interpretation of the by-law as concerned with inland flooding, rather than coastal flooding. Thus, it is not open to the Board to deny the permit on the ground that the site is subject to coastal flooding. All other matters within the scope of the by-law are open to the Board.
The Board’s decision on remand, whether granting or denying the permit, must set forth the Board’s findings of fact with respect to each of the requirements of the by-law for the grant of a special permit. In this regard, it is not sufficient for the board merely to recite the requirements; it must determine, as a factual matter, with respect to each requirement, whether that requirement is met in this case.[5] If the Board finds any of the requirements not met, it must deny the permit. If it finds each requirement met, it may, in the exercise of its discretion, grant the permit. In that event, it may also exercise its discretion to deny the permit, provided that it does so on rational grounds that are consistent with the by-law.
CONCLUSION AND ORDER
For the reasons stated, the decision of the Quincy Zoning Board of Appeals is VACATED, and the matter is remanded for further proceedings before the Board consistent with this opinion.

The present plaintiffs were not parties to that action.

The findings, in full, are as follows:
1) This case was remanded back to the Zoning Board of Appeals by Norfolk Superior Court Civil Action No. 04-00462, ordering the Board to vacate its original decision and reconsider the application.
2) Board Member Brian McNamee stated he does not believe any Superior Court Judge of the Commonwealth of Massachusetts can force or direct a duly appointed public board member to vote against their conscience. He stated there are phragmites growing on this land, consistent with marsh land. He further stated the Board has seen extensive flooding of this site by the way of photos submitted by abutters, showing flooding as recent as the May 2005 storm.

Properties emphasizes, and the plaintiffs concede, that at trial before Judge Connor, the Board stipulated that all the requirements except B were met. The Board did not, however, state findings to that effect in either of its decisions. Since the prior decision denied the permit, the abutters had no basis to appeal, were not parties to the previous case, and had no opportunity to be heard with respect to that stipulation. Thus the question remains whether the application meets those other requirements. The Board must resolve that question as a factual matter.